UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GUARIONEX SUAREZ, 86A3059 ,

                Plaintiff,

                                            DECISION AND ORDER

        -v-                                          04-CV-6362 CJS

DR. KEISER, et al.,

                Defendants.

---

## INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 in which a prison inmate alleges that prison medical staff were deliberately indifferent to his medical needs, in violation of the Eighth Amendment to the United States Constitution. Now before the Court is a motion [#8] brought pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against defendants Thomas M. Poole ("Poole"), the Superintendent of Five Points Correctional Facility ("Five Points"), and Lester N. Wright, M.D. ("Wright"), a Deputy Commissioner and Chief Medical Officer of the New York State Department of Correctional Services ("DOCS"). For the reasons that follow, the application is granted in part and denied in part.

## BACKGROUND

Plaintiff, a prison inmate, suffers from a painful vascular condition in his left leg. Plaintiff's Amended Complaint [#6] describes how prison medical staff prescribed him various pain medications and sent him to numerous outside hospitals for treatment. Nonetheless, plaintiff alleges that defendants were deliberately indifferent to his medical

needs on many occasions by denying him treatment. For example, he contends that defendants refused to provide him with the pain medication Ultram and with nerve-blocking injections even though both were recommended by a vascular specialist. In addition to suing the individual medical providers who dealt with him on a daily basis, plaintiff has also sued Poole and Wright, on the theory that they became personally involved in the alleged constitutional violation by failing to remedy the situation after he notified them about it through letters.

*The Alleged Involvement by Poole*

Plaintiff wrote to Poole concerning his medical situation on at least four occasions, June 3, 2002, October 12, 2002, December 7, 2004, and December 12, 2004. In his June 3, 2002 letter, plaintiff complained that the doctor at Five Points, Dr. Dobies, was being "deliberately indifferent" to him because he refused to provide him with a wheelchair and denied his request to be fed in his cell. Plaintiff further stated: "I am in pain and suffer for long time. I also have been request [sic] to the medical department my medical need but they are deliberately indifferent. Therefore I am writing to you because I really need medical attention with my left leg and also the [cold] weather is affecting me." (Pl. Response [#14])

In his letter to Poole dated October 12, 2002, plaintiff stated that he was in pain, due to poor circulation in his left leg, and that the medical staff was "ignoring all his requests." Plaintiff stated that he had not received pain medication or seen a doctor since July 2002. Plaintiff asked Poole to contact the medical department and request that he be given Ultram and a nerve block injection.

2

In his letter to Poole dated December 7, 2004, plaintiff complained that he had wanted to go to Albany to receive an injection from Dr. Chang, but instead he had been sent to a hospital in Syracuse, where the doctor apparently indicated that plaintiff should receive Ultram and a nerve block injection. Plaintiff told Poole that he was in pain and that he wanted Ultram and a "pain injection".

In his letter to Poole dated December 12, 2004, plaintiff complained that medical staff were "abusing" him mentally and physically. Plaintiff was upset because a facility physician, Dr. Gregoire, told plaintiff that he, and not Dr. Chang, would give plaintiff a nerve block injection. In that regard, plaintiff apparently believed that Dr. Gregoire did not have the expertise to administer the injection. Plaintiff also stated that Dr. Gregoire was refusing to give him Ultram. There is no indication in the complaint that Poole responded to any of plaintiff's letters.

In his Amended Complaint, plaintiff made the following allegation concerning Poole: "Since 2002 plaintiff have been bringing to the attention of Defendant Thomas M. Poole, all concernient [sic] to this matter, but Defendant Thomas M. Poole in 2004 do not help the plaintiff Suarez with plaintiff Suarez's medical need." (Amended Complaint p. 5-B)

*The Alleged Involvement by Wright*

Dr. Wright did not personally provide or refuse to provide any medical treatment to plaintiff. However, plaintiff wrote at least eight letters to Wright between 2002 and 2004. On July 17, 2002, plaintiff complained that staff at Five Points had discontinued his Ultram and were refusing to allow him to see Dr. Chang in Albany. Plaintiff also stated that there was no doctor working at Five Points at that time. On August 20, 2002, Wright responded

that plaintiff was scheduled to be seen in "the Pain Management Clinic". Wright also stated that plaintiff should address any other concerns to the health care staff at Five Points.

On August 22, 2002, plaintiff wrote to Wright, again stating that he wished to see Dr. Chang in Albany. Plaintiff stated that the medical staff at Five Points refused to provide him with Ultram or a nerve block injection, and had taken away his walking cane. Plaintiff wrote to Wright again on September 23, 2002, stating that he had not been seen by a doctor at Five Points since July 2002 (though he had been seen by a specialist in Syracuse in August 2002). Plaintiff stated that he was not receiving Ultram, but was receiving another pain-killer, Neurontin. However, he stated that Neurontin was not effective. Plaintiff wrote to Wright again on November 7, 2002, stating that he was in pain and had not received a nerve block injection.

On November 19, 2002, Joanne Kramer, RN ("Kramer") wrote to plaintiff on behalf of Wright. Kramer stated that DOCS' "Division of Health Services" had investigated plaintiff's complaints and had determined that he was receiving adequate treatment. Regarding plaintiff's leg, Kramer stated:

> Relative to your complaints about your knee problems, it appears that your complaints have been adequately addressed by the medical unit, you have seen an outside consultant, had multiple adjustments to your medications, and had and MRI of your knee on November 18, 2002 for which results are pending. I would encourage you to be more compliant with taking your medications as ordered.

Another DOCS staff member, Steven Van Buren ("Van Buren"), writing on behalf of Wright, wrote to plaintiff on January 28, 2003, and stated in relevant part:

> The Division of Health Services has investigated your concerns with the health staff at Upstate Correctional Facility. I have been informed that you saw the Physician Assistant on January 17, 2003 and you are on pain medication. In addition you have been referred to an orthopedic specialist

for an appointment in the near future. If you have additional health care concerns then access sick call.

(Plaintiff's Response [#14])

Plaintiff wrote to Wright again on February 24, 2003, complaining that the sick-call nurses were ignoring his complaints of pain. Plaintiff stated that health providers were refusing to give him a nerve block injection or Ultram, though they were giving him "Tramadol." He stated, however, that Tramadol was not alleviating his pain. Plaintiff also denied Kramer's suggestion that he was refusing to take his medication.

On May 17, 2004, plaintiff wrote a letter to Wright, entitled "Formal complaint & right to be seen by Vascular doctor." In it, plaintiff complained about the medical treatment that he was receiving at Five Points from Dr. Gregiore. Specifically, he stated that, while Dr. Gregiore had offered to treat his condition with a nerve block injection, he was "very uncomfortable with doctor Gregiore, doing anything to me because he hasn't not a clue as to my condition."

Van Buren, writing on behalf of Wright, responded to plaintiff again on May 21, 2003, stating that he had investigated plaintiff's complaints, and believed that plaintiff was being treated appropriately. Van Buren also stated that plaintiff was "often non compliant in taking [his] medication", and that plaintiff had refused to allow himself to be examined by "the facility physician" on May 19, 2003.

Plaintiff wrote to Wright on June 1, 2003, stating that he was on a hunger strike, and that staff were not treating him properly on sick call. For example, he stated that a nurse had failed to properly treat a problem that he was experiencing with his arm. Plaintiff also again requested that he be allowed to see Dr. Chang. Plaintiff wrote to Wright again on

November 3, 2003, alleging that corrections staff at Upstate Correctional Facility had taken away his wheelchair and forced him to walk, and that, as a result, both of his legs were painful.  He also complained that he had been placed in a "cool" cell, which was bad for his poor circulatory condition.

On September 15, 2004, Holly Collett ("Collett"), DOCS Regional Health Services Administrator, writing on behalf of Wright, responded to plaintiff concerning his requests to see a specialist and for additional pain medication.  Collett stated that she had investigated plaintiff's complaints, and that medical staff at Five Points were not recommending that plaintiff see a specialist.  She also noted that plaintiff was receiving medication.  In response to Collett's letter, plaintiff wrote to Wright on October 31, 2004, and reiterated that the facility doctor had recommended that he see a vascular specialist.  Plaintiff also repeated his request to be treated by Dr. Chang.

In the Amended Complaint, plaintiff makes the following allegations concerning Wright:

> Defendant Dr. Lester N. Wright (Deputy Commissioner/Chief Medical Officer[)] have been writin[g] to plaintiff Suarez concerning to plaintiff Suarez medical need.  Defendant Wright stated; It is suggested that yo[u] continue to bring your concerns to the attention of the health care staff using the existing sick call [procedure].  I am sure they will make every effort to address your needs.
> ***
> September 15, 2004.  Defendant Lester Wright wrote to plaintiff Suarez saying the following: The health service staff at Five Points, C.F. has advised the defendant Dr. Lester N. Wright that plaintiff Suarez primary care provider has evaluated provider Suarez. [sic]  Your provider has not recommended that plaintiff Suarez be referred to a specialist.

(Amended Complaint p. 5-B)

ANALYSIS

It is well settled that in determining a motion under Fed. R. Civ. P. 12(b)(6), a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). While the Court must accept as true a plaintiff's factual allegations, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). The Court "may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (internal quotations omitted)(*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "This standard applies with particular strictness where the plaintiff files a pro se complaint alleging civil rights violations." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).

Generally on a motion to dismiss pursuant to Rule 12(b)(6), the Court must consider only the complaint, which is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)(citations and internal quotations omitted). Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id*. at 153. In the instant case, the Court

has considered the Amended Complaint and the documents attached to it, as well as the additional copies of letters that plaintiff submitted in response to defendants' motion.

*Official Capacity Claims*

Plaintiff has sued all of the defendants in their individual and official capacities, and has requested unspecified injunctive relief and monetary damages. Defendants contend that all claims against them in their official capacities must be dismissed, to the extent that they seek money damages. The Court agrees, since it is well settled that claims seeking money damages against state agencies and departments, as well as state officials who are sued in their official capacities, are barred by the Eleventh Amendment to the United States Constitution. *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002). However, a plaintiff may sue such entities in their official capacities for injunctive or declaratory relief, and may also sue state officials in their individual capacities for money damages. *Id*. at 102. Accordingly, to the extent that plaintiff may be attempting to sue the State of New York, its agencies or departments, or any officials in their official capacities, for money damages, those claims are dismissed.

*Personal Involvement*

Defendants Poole and Wright contend that the remaining claims against them should be dismissed for failure to state a claim, since they had no personal involvement in the alleged constitutional violations. It is well settled that "personal involvement" under 42 U.S.C. § 1983 may arise in the following ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly

> negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Circuit 1995) (citation omitted).

Here, defendants contend, *inter alia*, that "the mere receipt of a letter of complaint from an inmate is insufficient to establish personal involvement and liability under § 1983." (Def. Memo [#9] p. 4) Many courts, including this one, have held in a particular case that a supervisory official did not become "personally involved" in an alleged constitutional violation merely by receiving correspondence from the plaintiff. *See, e.g., Petty v. Goord*, No. 00 Civ.803 (MBM), 2002 WL 31458240 at *8 (S.D.N.Y. Nov. 4, 2002) (Mukasey, J.) ("[C]ourts in this Circuit, applying the principles laid out in *Colon*, have agreed that receiving a letter from an inmate does not constitute sufficient personal involvement to generate supervisory liability."); *accord, Barclay v. Poland*, No. 03CV6585CJS(FE), 2006 WL 145552 (W.D.N.Y. Jan. 19, 2006) (Siragusa, J.) Instead, courts generally require something more before finding personal involvement. *See, e.g., Rivera v. Pataki*, No. 04 Civ. 1286(MBM), 2005 WL 407710 at *23 (S.D.N.Y. Feb. 7, 2005) (Mukasey, J.) (*quoting Johnson v. Wright*, 234 F.Supp.2d 352, 363-64 (S.D.N.Y.2002)) ("[P]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.")

The Court does not believe, however, that the mere receipt of letters is necessarily insufficient to establish personal involvement. For example, in *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997), in reviewing the district court's grant of summary judgment, the Circuit Court held:

> Sealey wrote two letters to [former DOCS Commissioner] Coughlin. Coughlin referred the first letter, Sealey's appeal from the second administrative segregation hearing, to defendant Selsky for decision. Sealey's second letter was a status inquiry to which Coughlin responded by informing Sealey that Selsky had rendered a decision. *Sealey's letters and Coughlin's response do not demonstrate the requisite personal involvement on Coughlin's part*.

(emphasis added) The court in *Sealey* did not hold that the receipt of letters could never establish personal involvement, but rather, made a decision based on the specific facts of that case. Similarly, in *Colon v. Coughlin*, 58 F.3d at 873, which also involved a summary judgment motion, the circuit court wrote:

> As to Senkowksi, the Superintendent[,] the gravamen of the complaint is that, prior to the Tier III hearing, Colon wrote to Senkowski complaining that contraband had been planted in his cell, and that Senkowski took no action to investigate Colon's complaint. This allegation, though based on personal knowledge and sworn to in the verified complaint, is insufficient to create a triable issue of fact. *The contents of the letter are not specified; we do not know, therefore, whether the letter was one that reasonably should have prompted Senkowski to investigate.* Moreover, Colon admits that the letter predated the Tier III hearing. We see no reason why Senkowski should have intervened in advance of an established procedure in which Colon was to be given the opportunity to substantiate the claim that he made in his letter. We therefore conclude that no reasonable jury could have held Senkowski liable.

(emphasis added) The Court interprets this language as indicating that such situations must be evaluated on a case-by-case basis.[1] That is, the details of an inmate's letter might

---

[1] Other circuit courts agree that there is no *per se* rule in this regard. *See, e.g., Vance v. Peters*, 97 F.3d 987, 993-94 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."); *Nami v. Fauver*, 82 F.3d 63, 67 (3rd Cir. 1996) ("[The complaint] suggests that the defendants were on actual notice by plaintiffs' reports [via letters] of rape, violence and the other conditions alleged in their complaint. *By itself, such notice may not equal proof of deliberate indifference; nevertheless, it directly contradicts the district court's tacit conclusion, which has no support in the record, that plaintiffs could prove no set of facts establishing deliberate indifference or otherwise entitling them to relief.*") (emphasis added).

trigger a particular supervisor's duty to investigate or to take some action, or it might not. For example, a letter alleging constitutional violations sent to a supervisor who had the authority and duty to remedy the situation might trigger personal involvement, while a letter to a supervisory official with no authority to remedy the situation probably would not. *See, Rivera v. Pataki*, 2005 WL 407710 at *22 ("[T]o allow a mere letter to an official to impose supervisory liability would permit an inmate to place liability on individuals who had no authority over the situation complained of merely by sending letters.") (*quoting Johnson v. Wright*, 234 F.Supp.2d 352, 363 (S.D.N.Y. 2002)). Accordingly, a supervisory official who ignores or otherwise fails to respond to correspondence is not necessarily insulated from "personal involvement" in the alleged constitutional violation. *But see, Thomas v. Coombe*, No. 95 Civ. 10342(HB), 1998 WL 391143 at *6 (S.D.N.Y. Jul. 13, 1998) ("[T]he fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement.")

Applying these forgoing principles, the Court cannot say as a matter of law, at this stage of the litigation, prior to discovery, that it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief against Poole or Wright. Plaintiff wrote numerous letters to both Poole and Wright, complaining that he was in pain and being denied medical treatment by individuals who were under their supervision. Consequently, it may be possible that plaintiff will be able to prove that defendants, "after being informed of the violation through a report or appeal, failed to remedy the wrong."

CONCLUSION

Defendants' motion [#8] to dismiss is granted in part and denied in part. The application to dismiss the claims for money damages against the defendants' in their official capacities is granted. The application to dismiss the remaining claims against Poole and Wright is denied.

    SO ORDERED.

Dated:    March 2, 2006
             Rochester, New York

                                        /s/ Charles J. Siragusa
                                          CHARLES J. SIRAGUSA
                                       United States District Judge