UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GUARIONEX SUAREZ, 86A3059 ,

                Plaintiff,

                                                  DECISION AND ORDER

        -v-                                           04-CV-6362 CJS

DR. KEISER, et al.,

                Defendants.
_____

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 in which Guarionex Suarez ("Plaintiff"), a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that prison medical staff violated his Eighth Amendment rights by denying him medical treatment. Now before the Court is that portion of an application [#68] by Plaintiff for preliminary injunctive relief, seeking an order that he be provided with medical treatment. Also before the Court is a renewed application [#69] for injunctive relief, requesting an order transferring Plaintiff to another facility. For the reasons that follow, the applications are denied.

BACKGROUND

The facts of this case were set forth in several prior decisions of this Court and need not be repeated here. (*See*, Docket Nos. [#15][#38][#51][#74]). Briefly, Plaintiff suffers from a painful vascular condition in his left leg, and he maintains in this action that between 2002 and 2004, Defendants denied him appropriate medical care for that condition. The alleged denial of medical care occurred at Five Points Correctional Facility ("Five Points"), where Plaintiff is currently housed. Plaintiff has been generally dissatisfied with the medical care

that he has received while in DOCS custody. However, Plaintiff believes that he has received appropriate care from Dr. Benjamin Chang M.D. ("Chang"), a vascular specialist who has provided treatment to him in Albany, New York, apparently pursuant to a contract with DOCS. Chang has provided Plaintiff with nerve block injections for leg pain at various times, and in February 2010, Chang indicated that Plaintiff would "continue to need this kind of care for the remainder of his life." (Docket No. [#73]).

Plaintiff maintains, though, that defendant Dr. Gregoire ("Gregoire"), a physician at Five Points, has refused to allow him to receive such treatment. Plaintiff further contends that Gregoire has refused to provide him with the pain medication Ultram. In that regard, Plaintiff states that Gregoire told him that he could not have Ultram because it is addictive. ([#68] at 3). Plaintiff does not indicate whether he is receiving some other type of pain medication. Plaintiff further contends that medical staff at Five Points are refusing his requests to be placed on the medical call-out list. As to this contention, Plaintiff states that although medical staff told him that he failed to appear for his call-out appointment, corrections staff told him that he did not have such an appointment. ([#68] at 2).

On January 29, 2010, the Court issued an Order [#70], directing Defendants to respond to the subject application [#68] by February 12, 2010. On February 12, 2010, Defendants' counsel filed an "Affidavit in Opposition" [#72]. However, the affidavit only discussed the logistical difficulties of transferring Plaintiff to another facility in light of his medical problems and his impending deportation. The affidavit did not address Plaintiff's claim that he is being denied both treatment and pain medication. Consequently, on April 27, 2010, the Court issued a Decision and Order [#74] that, in pertinent part, directed Defendants to file a supplemental response, including "an affidavit from a member of the

2

medical staff at Five Points with personal knowledge concerning Plaintiff's medical treatment."

On May 14, 2010, Defendants filed an affidavit from David Haimes ("Haimes"), a licensed Physician's Assistant ("PA") employed by Five Points. Haimes indicates that, since June 2009, he has been one of Plaintiff's primary health care providers at Five Points. Haimes states that his affidavit is based on his treatment and examination of Plaintiff, his consultations with Gregoire, and his review of Plaintiff's medical records. Haimes states that in July 2009, Gregoire examined Plaintiff and observed that he was able to easily bend over in a sitting position, with no apparent distress, was able to remove his socks and shoes without difficulty, and was able to walk and stand while experiencing some pain in his low back and left leg. Gregoire diagnosed Plaintiff with chronic neuropathy of the left leg, and prescribed a transcutaneous electrical nerve stimulation ("TENS") unit, elastic support stockings, orthotic shoe inserts, and wheelchair gloves. Gregoire also ordered a consultation for Plaintiff with a vascular surgeon in Albany, New York.[1] However, the DOCS Regional Medical Director denied the referral, and directed Gregoire to have a follow-up visit with Plaintiff in three months. In September 2009, Gregoire met with Plaintiff, and Plaintiff requested the pain medication Ultram. Plaintiff had previously been receiving Ultram, but it was discontinued in July 2009, "when he was caught passing his pill to his bunkmate." (Haimes Aff. ¶ 4). Gregoire noted that Plaintiff appeared to be functioning well, and he prescribed the pain medication Neurontin instead of Ultram. However, on December 18, 2009, the Neurontin was discontinued after Plaintiff "was discovered hoarding his Neurontin pills." *Id*. at ¶ 8.

---

[1] It is unclear whether the referral was specifically to Chang.

3

On November 5, 2009, Gregoire observed Plaintiff moving about the facility in his wheelchair, at which time Plaintiff was smiling and easily pushing his wheelchair. *Id*. at ¶ 5. At that time, Plaintiff again asked Gregoire for Ultram. On November 12, 2009, Gregoire saw Plaintiff for a follow-up visit. Plaintiff complained of pain, and requested Ultram as well as an injection from Chang in Albany. Gregoire made a referral, and on February 24, 2010, Plaintiff received a nerve block injection from Chang. Between January and February 2010, Plaintiff received physical therapy ("PT") for complaints of pain in his right hip. Plaintiff received PT twice a week for three weeks.

On January 16, 2010, Plaintiff was placed in the Special Housing Unit ("SHU") at Five Points. On February 2, 2010, Haimes examined Plaintiff, who was complaining of hearing loss and pain in his left hip. At that time, Plaintiff was already receiving pain medication, and PT for pain in his right hip. Haimes referred Plaintiff for PT evaluation for his left hip, and referred him to an audiologist for his complaint of hearing loss. Additionally, Haimes referred Plaintiff to a vascular surgeon for a "saphenous nerve block injection." *Id*. at ¶ 8. Haimes did not prescribe Ultram or Neurontin, because based on Plaintiff's prior conduct in giving away and hoarding his prescription drugs, Haimes did not believe that Plaintiff needed the medication. *Id*. at ¶ 8. On February 24, 2010, Plaintiff received a nerve block injection.

On March 2, 2010, Haimes examined Plaintiff, and Plaintiff again requested Ultram and Neurontin. Haimes denied the request, "due to [Plaintiff's] past history of abusing those medications." *Id*. at ¶ 11. Haimes offered to provide Plaintiff with "alternative pain medications, but Plaintiff refused them, and commenced a two-day hunger strike." *Id*.

On March 25, 2010, Plaintiff complained to Gregoire of pain in both knees and his lower back. Gregoire diagnosed "left saphenous neuropathy" and recommended

4

"exploratory arthroscopy of the knees." Gregoire also prescribed Ultram and Neurontin, after which Plaintiff declined to have the exploratory surgery. Currently, Plaintiff is receiving various medications including Ultram. *Id*. at ¶ 15.

Plaintiff has not filed any opposition to Haime's affidavit. Instead, on June 9, 2010, Plaintiff filed another application for injunctive relief [#79], requesting an order that he be transferred from Five Points. In support of the application, Plaintiff objects to a misbehavior report that he received on April 10, 2010, after he refused orders to remove a piece of paper that he had placed over his cell window, in violation of DOCS rules. Plaintiff claims that he covered his window in protest because he had not received his medications. The misbehavior report indicates that Plaintiff removed the paper once his medications were provided. Additionally, Plaintiff states that he is currently in voluntary protective custody, because his life is in danger from prison gangs at Five Points. In that regard, on May 25, 2010, Plaintiff requested "voluntary protective custody status," because he received threats after his cell mate told other inmates that Plaintiff was "a rapist and child molester."

## DISCUSSION

The standard to be applied when considering an application for a preliminary injunction is well settled:

> In most cases, a party seeking to obtain a preliminary injunction must establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in the movant's favor.

*Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996) (citations and internal quotation marks omitted). Violation of a constitutional right is considered "irreparable harm." *Id*. at 482 ("[P]laintiff has shown a substantial likelihood of success on his Eighth Amendment claim.

5

The district court therefore properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights."); *see also*, *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir.1998) ("In the context of a motion for a preliminary injunction, violations of First Amendment rights are commonly considered irreparable injuries.") (citation and internal quotation marks omitted). Moreover, "[t]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Candelaria v. Baker*, No. 00-CV-0912E(SR), 2006 WL 618576 at *3 (W.D.N.Y. Mar. 10, 2006) (citation omitted).

As for Plaintiff's contention that he is being denied medical treatment, the standard for such a claim is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

Applying these legal principles, it is clear that, with regard to Plaintiff's demand for additional medical treatment, he has not demonstrated that he is entitled to the relief he seeks. Instead, at most, the submissions indicate that Plaintiff's dissatisfaction amounts to a mere disagreement over treatment, which is not actionable under Section 1983. As for Plaintiff's request for a transfer, the application is denied for the reasons stated in the Court's prior Decision and Order [#74] issued on April 27, 2010. Additionally, the matters discussed in Plaintiff's motion [#79] have no connection to the subject matter of this action.

## CONCLUSION

Plaintiff's motion [#68] for injunctive relief, seeking an order that he be provided with particular medical treatments, is denied. The Clerk of the Court is directed to terminate Plaintiff's motion [#68]. Plaintiff's application [#79] for injunctive relief, seeking a transfer, is also denied.

SO ORDERED.

Dated: June 22, 2010
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge